## CARMODY v. CLAYTON.

(Court of Civil Appeals of Texas. Dallas. March 8, 1913.)

1. TAXATION (§ 93*)—PERSONAL PROPERTY— WHERE TAXABLE.

Personal property which has its permanent situs within the state is subject to taxation therein, regardless of the domicile of the owner.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 182–188; Dec. Dig. § 93.*]

2. TAXATION (§ 93*)—PERSONAL PROPERTY.

Personal property of a nonresident only temporarily within the state is not subject to taxation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 182–188; Dec. Dig. § 93.*]

3. TAXATION (§ 93*)—PERSONAL PROPERTY— SITUS FOR TAXATION.

Where one who had lived within the state for more than 12 years kept his personal property there, except when away on short trips, taking it out of the state only at the time of assessment, the property had a permanent situs in the state and was subject to taxation therein, though the owner still retained his citizenship in a foreign state.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 182–188; Dec. Dig. § 93.*]

4. TAXATION (§ 93*)—PERSONALTY—DOMICILE OF OWNER.

Within the purview of the tax laws, one who has lived within a state for over 12 years,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

though expressing an intention at some future time to leave, is a citizen, even though he has never exercised political rights within the state, and claims to be a citizen of a foreign state.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 182–188; Dec. Dig. § 93.*]

Appeal from District Court, Navarro County; H. B. Daviss, Judge.

Action by T. J. Carmody against J. H. Clayton. From a judgment for defendant, plaintiff appeals. Affirmed.

R. S. Neblett, of Corsicana, for appellant. Cobb & Taylor, of Corsicana, for appellee.

RASBURY, J. Appellant filed suit in the trial court to restrain appellee, the tax collector of Navarro county, from selling certain property belonging to appellant and levied upon by direction of appellee, the proceeds of such sale to be applied in payment of certain claimed taxes. The court below declined to grant the relief sought, and from that action this appeal is taken.

All the issues presented by the petition filed in the trial court are not presented here by the assignments of error; and hence it will only be necessary to state, in reference to the issues presented by the brief, that appellant had been assessed for the years 1910 and 1911, by the authorities of Navarro county, as the owner of certain money and credits situated in said county during said years, and that the appellee was attempting to sell the property levied upon in order to raise money with which to pay the assessment. The assessment, upon which the tax was sought to be collected for the year 1910, was upon $30,000 in money owned by appellant and situated in Navarro county. For the year 1911 the levy was upon $10,000 in money and $30,000 in credits, situated in Navarro county. Appellant did not render the items for taxation, but was involuntarily assessed by the county officers, after appellant had declined to make any rendition. The objections urged in appellant's brief to the sale of the property do not attack the legality of the assessment, nor deny the ownership of the money and credits which were assessed for taxes, although the pleading and the evidence to an extent raise the issue. Conclusions of fact were not filed by the trial judge, and it devolves upon us to perform that duty.

Briefly stated, the evidence shows that appellant was born and reared in the state of New York, and removed to Texas in 1896, from Ohio, as the representative of the Oil Well Supply Company, and continued with said concern until 1906, and seems to have been in business independently since. For this company he opened up stores in the various oil fields of Texas and at Jennings, La. He also entered into business at Corsicana, becoming a member of the firm of Carmody & Witherspoon, and is still a member of said firm. The management of that business, however, is largely with Mr. Witherspoon. The firm has farming and oil interests, and has been in business in Corsicana many years, and has paid taxes regularly on all its property. Appellant was married in Corsicana, November 28, 1906, and since his marriage he has always lived at the Main Hotel in Corsicana, with the exception of two months in 1911, when he and his wife boarded with Mr. Church, his wife's father. On account of the delicate condition of his wife's health, he has never owned a home in Corsicana, and it is his intention, when he does build a home, to build in a cold climate, due to the fact that the hot weather in Texas is too injurious to Mrs. Carmody. He also states that the various wedding gifts and household furniture belonging to him and his wife have been stored at the place of business of the Oil Well Supply Company, of which he is manager, since his marriage. Appellant states, however, that he has always maintained and preserved his political rights in New York state, never having voted in any other place, and vigorously claims that state to be his permanent home, and, in so far as the exercise of his political rights are concerned, the claim is sustained by the testimony. During the past 12 years, however, he has only visited New York some four or five times, as often, he says, as his business would permit. He states that during the 12 years since he came to Texas he visited Louisiana about every 2 weeks up to 1904, on business connected with his interests there, but does not appear to have done so since. He also says that during the past 12 years he has spent 6 or 7 months of his time in Oklahoma, having business interests there also. His total absence from Texas during the past 12 years is less than a year. The tax he seeks to avoid was for the years 1910 and 1911. The year 1910 he spent in Corsicana, except a short period in Dallas in attendance upon a sick relative. The months of January, February, March, and April, 1911, were spent in Oklahoma, where, as we have said, he had business interests. May, June and July were spent in Corsicana. At that time he went to his home in Cuba, N. Y., and did not return to Corsicana until November 1st. During all the time he has been in Texas, he has kept his moneys, notes, and securities in a tin box. This box he sometimes kept in the vault of the First National Bank of Corsicana, and, often, he says, he kept it himself. He says that when absent from the state the notes were most always with him. Also he says he carried his notes around with him because he preferred to do so, and that it was not done to avoid taxation. Nor does he claim to be a citizen of New York to avoid taxation. He says he learned a good many years ago that notes and credits in the hands of a local agent would be subject to taxation, but not so if

carried around in his possession, and that he has been careful to keep himself within such limitation, in order not to become embroiled with the Texas tax laws. His notes and mortgages were taken from the vault of the bank December 30, 1909, by Mr. Church, his father-in-law, at his request and forwarded to him at St. Louis. They were returned to him early in January, and remained with him until about December 30 or 31, 1910, when he left the state and returned in May. He did not secure the notes for the purpose of collecting them. He said he knew it would soon be January 1st, in each instance, and for that identical reason he removed them; for he knew that if they were not in the bank the assessor would not get them. He did not render the property for taxation in New York state.

E. H. Church, father-in-law of the appellant, testified that appellant and wife never did agree on any place to live, but that Mrs. Carmody preferred California.

[1] Preliminary to a discussion and application of the facts in the case to what we consider the issues involved, and for the purpose of eliminating from this case questions of law which are well settled, it can be said that the right of the state to tax all property of the character involved in this proceeding, when the same has its permanent situs within the state, is no longer an open question. Hall v. Miller, 102 Tex. 289, 115 S. W. 1168; Jesse French P. & O. Co. v. City of Dallas, 61 S. W. 942; State of Texas v. Fidelity & Deposit Co., 35 Tex. Civ. App. 214, 80 S. W. 544; Bristol v. Washington County, 177 U. S. 133, 20 Sup. Ct. 585, 44 L. Ed. 701; New Orleans v. Stempel, 175 U. S. 313, 20 Sup. Ct. 110, 44 L. Ed. 174. The cases cited exhaust the subject and cite cases from many states pertinent to the issue, and for that reason we content ourselves by reference thereto.

[2, 3] It is urged by counsel for appellant with great zeal and ability that the tax was unlawful, for the reason that the property assessed was not permanently situated in Navarro county during the years 1910 and 1911. If appellant was a nonresident of Navarro county, which we will discuss at another place, and the property was only temporarily situated in Navarro county, the assessment and the tax would be unauthorized. For the purpose of determining the situs of the property, we waive for the time whether or not appellant was a resident of Navarro county. Relative, then, to the situs of the property, it does seem to us, according to the testimony, that for the year 1910 its permanent situs was the vault of the First National Bank of Corsicana. Appellant testifies that the property was taken from the vault of the bank December 30, 1909, and sent to him at St. Louis, but returned to him early in January, 1910, and replaced in the vault of the bank, where it remained until December 30, 1910. Appellant's testimony, which

is entirely frank, completely destroys the claim that the property was temporarily in Corsicana for that year. This conclusion is particularly irresistible when taken in connection with his further frank statement that he sent it from the state when he did for the reason that he knew the tax assessor could not get it for assessment if it was out of the state. If he removed the property from the state to evade taxation, and it is difficult to draw any other conclusion from such statement, it was ineffectual to do so (Hall v. Miller, supra), and emphasizes that the removal was but temporary, and is a circumstance tending to establish its permanent location in Navarro county, rather than its permanent removal to St. Louis.

For the year 1911 the facts in relation to the situs of the property are somewhat different, resulting largely from appellant's business matters. During that year appellant left the state December 30, 1910, going first to Oklahoma, where he had business interests, taking the property with him, keeping it in his possession until his return to Texas in May, 1911, where he remained during May, June, and July, leaving at that time for New York and returning to Corsicana in October. The testimony fails to disclose where he had his property while absent from the state from July to October, but it does show that in the following December he again removed it from the vault of the First National Bank, in order to avoid becoming embroiled, as he states, with the assessor. The evidence further indicates that each removal of the property from Corsicana during 1911 was temporary, and due largely to the fact that appellant's business matters called him oftener from the state than at any other period covering his long residence in Texas. It appears, however, that after each removal it finally made its way back to the vault of the bank at Corsicana. The evidence also discloses that appellant never removed the property from the bank at any time, except the times when he was called temporarily out of the state, or when he was on a visit to his old home in New York, or at the assessing period. Upon a careful consideration of all the testimony, we are persuaded that the permanent situs of the property for the years indicated was Navarro county, and we so conclude.

[4] We are further of opinion that, in view of the evidence which we have discussed in relation to the actual situs of the property during 1910 and 1911, coupled with the long-continued residence of the appellant and his wife in this state, he was a citizen of Texas, in contemplation of the tax laws. It is true that, so far as his intention is disclosed, either by conduct or oral declaration, he has at all times refrained from the exercise or performance of those political rights and duties conferred upon him as a citizen by the laws of the state where he has resided, pre-

ferring apparently to defer those matters until such time as he and his wife might reach a conclusion as to where they would ultimately make their home. Such matters, however, are largely personal, determinable to an extent by personal predilection, and depending, in a measure, upon the view of individual duty and responsibility. But the legal duty to pay taxes is not dependent upon the exercise of political rights. In fact, it occurs to us that merely refraining from the exercise of such rights is, at most, a circumstance to prove nonresidence and in no sense establishes nonresidence incontrovertibly. The statutory enactments in reference to the payment of taxes in some instances speak of citizens, in some of inhabitants, and in some of residents, showing a clear intention to follow the constitutional injunction that all shall pay their just portion of taxes who own or hold property in the state, without reference to political citizenship. There are, perhaps, many persons in this state who have and desire no political rights, and who as well contemplate ultimately removing from the state when their affairs are satisfactorily adjusted, just as appellant says he intends to do; but those several facts, it occurs to us, afford no reason why their property during the years of actual residence in the state, when found, shall not bear its just share of the burden of government. As said by the cases cited, it shares in the benefits, and should not escape the burdens. It is no answer to this just demand to say that the person sought to be taxed is here temporarily, a mere sojourner, for a period of years, or that the property was removed on the first of each year. Such a claim affords its own answer and refutation. Hence, in our opinion, appellant's character of residence in Texas for the past 12 years has been, and was during the years for which he was taxed, such residence as to constitute him, in contemplation of the tax statutes, a citizen of the state, and to subject the property in controversy to taxation, without reference to his political residence, as shown by his intentions.

The judgment of the trial court is affirmed.