CRANE COMPANY, Appellee, v. CITY COUNCIL OF DES MOINES, Appellant.

No. 39439.

May 7, 1929.

*Charles Hutchinson, F. T. Van Liew,* and *Theodore F. Mantz,* for appellant.

*Hughes, Taylor, O'Brien & Faville,* for appellee.

ALBERT, C. J.—Crane Company, appellee, is a corporation organized under the laws of the state of Illinois, with its principal place of business and home office in the city of Chicago. It has complied with the laws of Iowa in relation to foreign corporations transacting business within the state. It had, for some time prior to the commencement of this action, maintained an agency in the city of Des Moines. We gather from the record that it owned the business building in that city from which was distributed a line of manufactured goods, consisting of plumbing fixtures of all kinds and descriptions. Among other things, it at all times kept on deposit in one of the banks in Des Moines the sum of $3,000 for the current use of its agency. Taxes were levied against the real estate, the goods on hand, and the $3,000 above referred to, which taxes were paid; or at least no question is raised as to the correctness thereof in this proceeding.

The assessor also made a return against the corporation for assessment (after making proper deductions) of something over $35,000, representing book accounts owed the Crane Company for goods sold through its Des Moines office; also some accounts representing goods sold directly from the Chicago office, such sales being charged against the local agency in Des Moines, which was expected to collect the same. The Des Moines agency was to collect all of these accounts, and remit the same promptly to the

home office at Chicago; and remittances were made every week, covering collections so made. The Crane Company duly appeared before the city council of Des Moines as a board of review, and protested against the assessment of these book accounts. The protest was overruled, and an appeal was taken by the Crane Company to the district court of Polk County, where, as above noted, the assessment was set aside; and this appeal is from the action of the district court.

The question we have for consideration is whether or not these book accounts or the debts which they evidence are the subject of taxation under the laws of Iowa, in view of the fact that the Crane Company is a nonresident corporation.

Personal property may have a twofold situs: actual situs, as distinguished from legal situs. If a statute fixes the situs, and the statute is constitutional, the legal situs thus created is, of course, controlling. Again, the place of taxation may depend upon the character of the property: that is, real property, tangible personal property, or intangible personal property. It may also be affected by the permanency of the location or the purposes for which the property is being held.

Intangible personalty includes open accounts, credits, (whether or not evidenced by writing), promissory notes, mortgages, bonds, shares of stock, deposits in bank, judgments, etc., where the debt or obligation is the real thing which is sought to be taxed. The general rule is that the situs of intangible personal property for the purposes of taxation is the domicile of the owner. This rule is usually bottomed on the legal maxim *"mobilia sequuntur personam,"*—i. e., "movables follow the person;" or, as sometimes stated, the situs of personal property is the domicile of the owner. We have recognized this rule in *City of Davenport v. Mississippi and Missouri R. Co.,* 12 Iowa 539; *Hunter v. Board of Supervisors,* 33 Iowa 376; *Hutchinson v. Board of Equalization,* 66 Iowa 35; *German Tr. Co. v. Board of Equalization,* 121 Iowa 325; *Gilbertson v. Oliver,* 129 Iowa 568; *In re Estate of Adams,* 167 Iowa 382; *In re Estate of Colburn,* 186 Iowa 590.

An exception to this general rule has, however, always been recognized: that, where the property has acquired a business situs in another state, different from the domicile of the owner, this rule does not apply; and we have also recognized this ex-

ception to the general rule in this state in the cases cited supra. This exception seems to be quite generally recognized in the law of taxation, and it is settled that credits belonging to a nonresident may acquire a business situs so as to be taxable.

The term "business situs," while of modern origin, would seem to mean what the words indicate: that is, a situs in a place other than the domicile of the owner, where such owner, through an agent, manager, or the like, is conducting a business out of which credits or open accounts grow and are used as a part of the business of the agency. As between states, it does not cover merely transitory presence, for merely temporary or isolated transactions. *Buck v. Beach,* 206 U. S. 392 (51 L. Ed. 1106); *Board of County Com. v. Hewitt,* 76 Kan. 816 (14 L. R. A. [N. S.] 493). In *Hinckley v. County of San Diego,* 49 Cal. App. 668 (194 Pac. 77), it is said:

"[There must be] something like a general, or more or less continuous, course of business or series of transactions within the state where the property is physically located, as distinguished from mere sporadic and isolated transactions."

See, also, *In re Estate of Jefferson,* 35 Minn. 215 (28 N. W. 256). Nor is mere presence for safe-keeping enough (*Buck v. Beach,* supra; *Commonwealth v. Green,* 150 Ky. 339 [150 S. W. 353]; *Carmody v. Clayton* [Tex. Civ. App.], 154 S. W. 1067); nor where it is sent to an agent or attorney merely for collection. Intangible personal property may acquire a business situs so as to be taxable elsewhere than in the state where the owner is domiciled, although not evidenced in writing. *Liverpool & London & Globe Ins. Co. v. Board of Assessors,* 221 U. S. 346 (55 L. Ed. 762). The rule of business situs has been applied also to credits arising from loans made by agents of foreign insurance companies. *Metropolitan Life Ins. Co. v. City of New Orleans,* 205 U. S. 395 (51 L. Ed. 853). It has also been applied to credits arising from premiums due in connection with the local business of an insurance company. *Liverpool & London & Globe Ins. Co. v. Board of Assessors,* supra. It has also been held that credits arising from a business in the state by a branch of a foreign corporation may be taxed. *Commonwealth v. Avery & Sons,* 163 Ky. 828 (174 S. W. 518); *People ex rel. Burke v. Wells,* 184 N. Y. 275 (77 N. E. 19); *Marshall Hdw. Co. v. Multnomah County,*

58 Ore. 469 (115 Pac. 150); *Armour Packing Co. v. Mayor of City of Savannah,* 115 Ga. 140 (41 S. E. 237); *State v. Pittsburgh Plate Glass Co.,* 147 Minn. 339 (180 N. W. 108); *Clay, Robinson & Co. v. Douglas County,* 88 Neb. 363 (129 N. W. 548).

It would seem in this case, therefore, under this line of authority,—there being no constitutional question raised,—that there can be no doubt of the right or power of the state in the first instance to levy taxes against these book accounts. The question left, therefore, is whether or not the state of Iowa has by legislation exercised this power.

In the Iowa statutes, appellant relies upon Sections 6963, 6966, 6984, and 6985, Code of 1927. Without setting out these statutes, it is sufficient to say that, in our opinion, they are not controlling on the question before us, in view of the fact that the legislature has, in our opinion, attempted to take care of situations of this kind by Section 6958, Code of 1927, reading as follows:

"Any person acting as the agent of another, and having in his possession or under his control or management any money, notes, and credits, or personal property belonging to such other person, with a view to investing or loaning or in any other manner using or holding the same for pecuniary profit, for himself or the owner, shall be required to list the same at the real value, and such agent shall be personally liable for the tax on the same; and if he refuse to render the list or to swear to the same, the amount of such money, property, notes, or credits may be listed and valued according to the best knowledge and judgment of the assessor."

It will be noted that this section in substance provides that, where any person is agent for another, "having in his possession or under his control or management any * * * credits, or personal property belonging to such other person, with a view to investing or loaning or in any other manner using or holding the same for pecuniary profit, for himself or the owner," such property is required to be listed at the real value thereof.

It is quite apparent that this section of the statute was intended to cover personal property within the state held by an agent under the terms specified; but the legislature has limited this by providing that, if such property is held for the purpose

of loaning, investing, or holding for pecuniary profit, it must be listed and taxed. This is the only section of the Code dealing with property of nonresidents, and it is obvious that the kind of property we have in the case before us is not included in this section of the statute. In other words, only credits belonging to nonresidents that are held by an agent within the state for the purpose of investing, loaning, or pecuniary profit are required to be listed and assessed. This being the situation, it follows that the kind of property we have under consideration in this case,—to wit, book accounts owned by a nonresident and held by an agent in this state that are not so held for investment, loaning, or pecuniary profit,—is not subject to taxation, under the statutes as they now exist. The result of this is that the holding of the district court was right.—*Affirmed.*

EVANS, KINDIG, WAGNER, and GRIMM, JJ., concur.

FAVILLE, J., takes no part.